Can you call the next case? 17-09-06, Stephanie Sharf on behalf of Sheriff Dart. And can the lawyers who are going to argue please step forward and tell us your names. Good afternoon, Your Honors. Nicole Chaney, General Counsel of Teamsters Local 700 on behalf of Plaintiff Appellant Steve Cruz. Good afternoon, Your Honors. Stephanie Sharf on behalf of Sheriff Dart. Okay. A couple of preliminary things. First of all, the microphone is only for recording, not amplification. This is a pretty full courtroom. Please keep your voices up. Second of all, you each have 20 minutes. You do not need to take your whole 20 minutes, but I will ask the appellant if you would like to reserve part of your 20 minutes. Would you? Yes, please. I would like to reserve five minutes. All right. And third of all, there was a motion by the sheriff to cite additional authority. We are aware of that authority. Do you have any objection to the motion? No objection. Okay. So we will issue an order today, but you may argue that authority. You should address that authority if you are familiar with it. All right. Have a seat and you may begin. Good afternoon, Your Honors. I do want to admonish the court that I have been a little ill, so I am going to try to the best of my ability to project, but if you cannot hear me or need me to repeat anything, please let me know. All right. Again, as stated, Nicole Chaney, General Counsel from Teamsters Local 700. On behalf of Plaintiff Appellant Steve Cruz, may it please the court. Central to the resolution of the issues before this court today are considerations of justice, due process, public policy, and checks and balances. Now more than ever, it is incumbent upon the judiciary to ensure that the mandates of our legislature are followed and enforced in such a fashion that it does not grant any public official, elected official, greater power than is provided for in the statute. And that brings me to the first point that I would like to address with you here today, which is that the Merit Board Act at issue in this case, in that act, the legislature has expressly conferred upon sworn law enforcement officers of the Cook County Department of Corrections a property interest in their employment. That requires that they are entitled to due process prior to the deprivation of that property interest. In this case, it is eminently clear, and in fact, the facts do not appear to be in dispute as it relates to the periods of time during which certain appointments were made. I recognize that opposing counsel, the Sheriff's Office, has filed a motion to cite to supplemental authority by way of the Lopez opinion that was recently issued. However, I would contend that that opinion actually favors our position here today, and I will reiterate the reasons why going forward. As it relates to the entire canon of case law that supports or that addresses the issue of appointments to the Cook County Sheriff's Merit Board and administrative agencies, it is perfectly clear that an agency cannot act beyond their specific statutory authority, and in the Taylor case, this Court had occasion to contemplate the effect of the Rosales appointment. The Court concluded that that appointment was improper under the Merit Board Act, and the Sheriff did not have authority to appoint Rosales to a term of fewer than six years. In Lopez, the Court considered the same appointment, the appointment of John Rosales to the Merit Board, and in that case, they applied the de facto officer doctrine to Lopez to indicate that only Taylor as the initial litigant to address and uncover the illegality would be the individual who would obtain relief as a result of the improper appointment. Here, we're not talking about John Rosales. But it's an improper appointment procedure, isn't it? The Sheriff was going around appointing people to people shorter than six-year terms. That was improper. Legislature's fixed it, actually, going forward, which I'd like you to address. But it's the same procedure. So it was Mr. Rosales to Mr. Right. Mr. Rosales is not the three or two. I'm not clear whether you're talking about two or three people, but whatever. It's the same problem, right? It is an additional problem arising after the Rosales issue. What's the difference? It's the same problem. It's shorter than a six-year term. It is shorter than a six-year term, but the effects of the appointment to at least three individuals to a term of fewer than six years affects the overall constitution of the Board. So whereas in Rosales, it was one individual who was implicated, in this case, there are three individuals who are implicated. And under 7002, the problem is that that requires a minimum amount of seven and a maximum amount of nine Board members. With the three improper appointments that we're talking about, the Widdop, Gray-Matteo-Harris, and Patrick Brady appointments, that would bring them down to a five-individual panel. So it's not even constituted as a minimum number required by the statute. That's not what Lopez says. Lopez doesn't say, it's okay because it's only one. It says, look, de facto officer doctrine can't challenge the constitution of the Board this way. This problem has been addressed by the court. It's been addressed by the legislature, right? It's been fixed prospectively. Indeed, Your Honor, I would point out that in the Lopez case, it says as it relates to the Rosales appointment. And I understand that that may be sort of a difference without distinction, so to speak. However, that case didn't contemplate a situation where there wasn't even the minimum number of individuals on the panel required by statute to function. And, in fact, in the Daniels case, I do believe that one of the arguments raised before the appellate court was that because the administrative body was not properly constituted, it essentially didn't exist as a body of law. Excuse me, an agency, an administrative body that was empowered to act under its enabling act. Now, the Lopez decision discusses with great detail the McMurrow dissent from her, the special concurrence, excuse me, from Justice McMurrow in the Daniels case. And if you look to the special concurrence and the reasoning that Justice McMurrow sets out, one of the things that he identifies is that she, oh, I am so sorry. You just threw out your brief on that one. My apologies. One of the. We all know you're not necessarily expected. She's the first female to ever sit on the court. Right. Well, that's all the more reason for me to know. I apologize for that. In Justice McMurrow's dissent, she specifically articulates that one of the reasons for allowing Daniels to obtain the benefit of uncovering the decision is because otherwise there would be no incentive to uncover issues. In this case, we have uncovered at least three. And I'm not suggesting that I know of other improper appointments. I'm saying that I know of at least three. And that, on its face, suggests that those are additional issues that were uncovered. And not only are the additional issues that were uncovered contemporaneously to the Rosales appointment, those appointments were effected after the sheriff and the merit board were put on notice that the Rosales appointment was challenged. Now, the end point of that is that a court order from Judge Cohen came down in 2014, the fall of 2014, finding in his order that Rosales was improperly appointed under the statute. Thereafter, instead of looking around to see if there were other issues with the current appointments or the existing appointments and attempting to rectify those issues as it related to current and future appointments, the sheriff essentially failed to... But this is very intuitive because the sheriff points out that you never raised it before the merit board and that you did have the benefit of these decisions. You had not only the fact that the merit board was constituted the way it was, which was a public record, but you had decisions that said, hey, there's a problem. You didn't raise it before the merit board. You didn't raise it before the circuit court. Yes, Your Honor, that is true. And I would concede that fact that that wasn't raised at the merit board level. It was not raised at the circuit court level. And it was not raised until our brief in this court. However, even if we were aware of the impropriety of the Rosales appointments, that would have occurred later. And the appointments of Gray-Matteo Harris and the appointment of Patrick Brady didn't occur until somewhere in early 2015. But they occurred before you were heard before the merit board, right? That's why it matters, right? That's why you raised it. They were on the merit board when the merit board considered your client's case. They were on the merit board when the merit board considered our case. And I'm not suggesting that we couldn't have raised those arguments, but I think that that is irrespective of whether we raised them at the merit board level or at the circuit court level. Those issues are presently before this court because of the posture of the case and the timing and the way that that played out in this particular case. The case law is clear that it's not an issue that can be waived. And I think even the Taylor decision specifically says that. I think what it says is forfeiture is a limitation on the parties, not on the court. The court will do what it wants. That's true. And what the Taylor court also opines is that this is an issue that is an issue of jurisdiction. These sorts of issues can be raised at any time in a collateral or a direct proceeding. And I could give you the specific citation there, but it also refers back to the Daniels and I believe the other bodies of case law that it relies upon in stating that it's not simply for failing to raise it at the merit board level or at the circuit court level. That is not an impediment that disposes of the case entirely. I'd like to ask you, I don't want to cut you off from responding to Lopez or certainly cut off either of you, but I would like you to address the sanction imposed and the propriety of that, particularly in light of the fact that there's some evidence in the record that your client had PTSD and was responding in part in light of an earlier event in which the merit board referenced but didn't reference it specifically in terms of termination. Certainly. And when you reference the sanction imposed, you're talking about specifically the merits of the underlying administrative review law claim. No, I'm saying you can address that certainly, but I'm saying assuming that there was a sustained finding that he violated a rule and regulation of the sheriff's office, I think there's a separate inquiry, a separate review by this court of the decision to terminate him as opposed to imposing some lesser sanction. Especially given there was not an extensive disciplinary history. That's exactly correct, Your Honor. There is not an extensive disciplinary history and I don't believe that any evidence of prior discipline was issued, excuse me, considered or submitted into evidence before the court. We do take issue with the substantive decision of the merit board as it relates to their findings and their ultimate decision to terminate Officer Cruz. And in their brief, the sheriff discusses and seems to concede as a matter of fact that the Vuk Markay testimony was credible and that the merit board did not find against Vuk Markay's credibility in giving his testimony. Of course, the most compelling evidence, and the sheriff had to supplement the record with it, is the video itself. And I'm glad that you brought that up because I do want to put a fine point on one of the arguments that the sheriff raised in their brief. And they seem to imply that that was some sort of a strategic maneuver and that they call into question my integrity in bringing the case before the court. I want to make it perfectly clear that was not in any way an intentional omission or an attempt to strategically overpower the case in chief. The way that the record is prepared is it's something at the circuit court level that's prepared by the administrative agency and filed with the circuit court, and then we transmit the record from the circuit court into the appellate court. Any lack of video was not an intentional omission. It was simply an oversight. And I do take great issue with that kind of an argument because it suggests that I was doing something that was amiss. I understand what you're saying. Sure. Because it's in two pieces before the circuit court, so part of it gets put forward and sometimes the video just doesn't get put forward. That's right, and we're notified that the record has been compiled and we transmit it to the appellate court as far as whether the video was or wasn't in there. If you look at the timing, this is also this case, the record in this case was filed right around the time that there was a transition from hard copy filing to e-filing. So I think it's just the timing and simply an oversight as far as the video goes. But I do want to talk about the video for a brief moment because in our brief we do argue that the mirror board's decision was against the manifest rate of the evidence and clearly erroneous. And as it relates to their findings, there is great emphasis on this, quote-unquote, ability to de-escalate, simply because the mirror board finds that there was an ability to de-escalate or because there was some other alternative. It was concerned because I think it's also just a strict concern in my concern where she's just asked me to speak, but you're going backwards. About the sanction? Yes. Yes, Your Honor, and I actually do want to address that. We're running out of time, so we're trying to get you to get to the hot issue here. Yeah, absolutely. The sanction imposed is absolutely excessive in this case, and I would suggest to you that the way that an individual responds in a use-of-force case, there are a number of factors that go into their response. And the fact that Officer Cruz had been previously attacked because he was not aggressive enough in a situation with a detainee, he was on a higher alert. He had just come off from a leave where he had been on PTSD as a result of the attack against his person. So that didn't really seem to factor into the mirror board's decision at all as to whether his response was reasonable under the circumstances. And the reason why I wanted to highlight the Vuk Markay testimony is because the sheriff kind of characterizes it as something where Vuk Markay said that the detainee was stopped resisting. He expressly indicates that the detainee's resistance ceased at the time of the OC spray, at the time that Cruz deployed the OC spray. He also characterizes that, and this goes on for several pages in the transcript, he specifically characterizes the detainee as attempting to resist his control to pull him back. And you can even see on the video, which is one of the reasons why I want the video to be before the court, the detainee is thrown off his jacket. He's visually indicating that he is not giving up the fight, that he is preparing to aggressively posture even as Vuk Markay is attempting to walk him back. What about the false reports? As it relates to the false reports, the point that I would make on that is that, first of all, the mirror board decision doesn't clearly identify in its finding of facts what it viewed as false. I think that is a direct, any findings that the reports were false is a direct... Well, it says here, the respondent falsely documented that detainee Levi Heard was attempting to escape. You know, it does have things falsely reported to investigators that he told the detainee to stop resisting. I'll just quickly... Sure, and as far as the whole part about attempting to escape, that's with respect to Vuk Markay's hold, right? He's attempting to escape from that. The other alternative explanation is, and I could look to Cruz's testimony to give some more specificity on that, but he is talking about in the beginning as well when the detainee is supposed to be going in a particular direction and he's not, and he's not responding to orders to go where he was supposed to have gone. And this is in a receiving area where there are basically individuals being booked because they're new into the jail, have various classifications of, you know, minimum, medium, maximum security, or what have you, and there's not a... It's relatively unsecure and unstable in the grand scheme of things because of the nature of receiving. So as far as detainee hurt attempting to escape, I could refer to the testimony to get some more specificity on how Cruz described that, but I do recall that there was the issue where the detainee was mingling about and basically he wasn't supposed to be mingling about before he approached the detainee to try to give him direction on where to go. And then there's also the part where the detainee is trying to basically overcome the efforts of Vuk Markay as well. As it relates to the allegation of false reporting, I don't think that that is evidenced anywhere as being an intentional false report or some sort of a fraudulent attempt to characterize the situation in any way other than that's how Cruz perceived it. And then the merit board disagrees with how he described the incident. Now, I do want to get back to... I do want to reserve my time. Sorry, I don't want to go into any more than that. I would just highlight that at this very core, this case stands for the proposition that the sheriff should not be allowed to benefit from the wrongs that his office has done.  I don't want to go into any more than that. Thank you. Good afternoon, Your Honors. I am prepared to talk about the merit board decision on its merits as a manifest way to the evidence standard or the de facto officer doctrine first. I don't know what your preference is. Why don't you start with the merits of the decision and the sanction and the punishment. All right. So plaintiff did not mention even in her reply brief anything about the video. This case is somewhat unusual. We have a video showing exactly what happened. And plaintiff did not mention even here the fact that the detainee was in a neck hold held by another officer not trying to escape at the time that Officer Cruz sprayed O.C. spray or pepper spray directly in his eyes. And the merit board knew about that information. The merit board said that Officer Cruz had the opportunity to deescalate the situation. There is no evidence to show that Officer Lugmarkaj, the guy who had the detainee in the neck hold, had any type of struggle to walk this detainee away. He was in control of the detainee when Officer Cruz sprayed him with O.C. spray. It was just one spray, right? That's clear. I believe it's one spray. One puff. Yeah, not that one puff fails to cause harm. I understand. And the standard opposing counsel mentioned testimony.  It's about weight of the evidence. And the board's summary of the video in paragraphs 7 and 8 of its decision and of witness testimony showed what the evidence meant to the merit board. And on this record, there is certainly evidence supporting the merit board's conclusion, which is sufficient to meet the manifest weight of the evidence standard. Now, turning to the second issue, there clearly was cause to terminate Officer Cruz. And overturning a termination happens only if the termination is unrelated to the requirements of service. And that standard is not met here. Overly harsh in view of mitigating circumstances. Overly harsh in view of mitigating circumstance, which the mitigating circumstances itself is evidence that is considered in the whole. It's not something that stands alone. It's in the weight of all of the evidence the merit board received. And, of course, as a matter of law, there is considerable deference to the merit board's finding of cause for discharge. And I will say, which is no secret, the sheriff's use of force order, which is cited in the merit board decision, states expressly that officers using excessive force are subject to termination of employment. But that's not the only choice that the sheriff has. That is not the only choice. But there's no question that officers are aware that that is a penalty. Not using excessive force is a requirement of service. And it's certainly reasonable for the merit board to enforce that rule and the going forward impact on other detainees and the public if the use of force policy is not firmly enforced. The merit board's decision to terminate was not arbitrary or unreasonable and was related to the needs of service. There's no question that this officer was on notice that the rule could lead to termination. The evidence was there. And it should not be a surprise if the merit board chose in the circumstances of this case, which it weighed, that termination was the penalty. I understand your arguments in response to that last year's argument. But is there even a record about why there was a two-year, I think over a two-year delay between the incident and the sheriff bringing discipline, given, as you say, the importance of this policy from the sheriff's standpoint? Well, I don't know how many other cases the sheriff had at the time. I don't know the circumstance of what's going on. There was that gap, although that gap is not contrary to law, as Your Honor mentioned. There is no time period for the merit board to decide a case. And that's case law, again, in the first district. But if you have an overly aggressive, if there's a serious disciplinary issue, meanwhile the officer is continuing to work, correct? The officer is continuing to work. I don't know what other serious cases there were and what those involved. I'm confident without, you know, I can't be specific, that this case moved as well as it could and finally got to a judgment. Well, in addition to the two years, the appellate's brief says that neither Mark, it begins with a V, Officer V, nor crews were permitted to review the video incident. Why would that be? And then they were going to be questioned, but it's two years later and they didn't have an opportunity to review it? I don't know that they were not allowed to review it. I apologize, Your Honor, I did not know that was a fact. But even if they were not allowed to review it, they're supposed to give independent testimony based on what they felt and experienced and saw, not based on what a video tells them happened. So I don't think it would be unusual to not allow a witness to see other evidence in a case. And in fact, we have a rule in Illinois that the witness who testifies can't come into the courtroom when other witnesses are testimonying. To me, it's a very analogous situation. What about the PTSD? Do you think that has any impact whatsoever on whether termination was appropriate? I don't know how well documented that was. I know that this officer knew that he should not be involved with detainees and yet he remained in that situation. According to his testimony, he told his superior what the doctor said and they put him back in that position. That's according to his testimony, I understand. And the merit board had the opportunity to weigh everything and reach a conclusion about whether breaking that policy was against the manifest rate of the evidence. So I think that the merit board has to be given deference to decide whether  And I think they have to be given deference to decide what's appropriate. Any given person may reach a different conclusion, but the merit board reached the conclusion it reached. So if there are no other questions, should I move to the de facto officer document? Sure. Okay. So there are two big issues looming here, and that is whether the merit board decision is void. And there are two independent reasons why it is not void. One is the de facto officer doctrine. The other is the doctrine of retroactive application of this statute. But let me take the de facto officer doctrine first, which alone would sustain the merit board's ruling. And Your Honor touched on wasn't this problem fixed. And I think there's probably a little bit of a question. What is the problem that was fixed? Is it enough that there was a general improper appointment? And let me just point out in Taylor, Taylor actually addressed the same two appointment problems that Cruz raises here. Taylor addressed the problem that a board member was appointed to less than a six-year term, referring Your Honor to paragraphs 8 and 11 of the Taylor decision. And Taylor addressed that a board member was serving after his term had expired. That's also in paragraph 8 of Taylor. And those happen to be the same two challenges made here. The challenge to Ms. Mateo Harris and Mr. Brady is that they served less than a six-year term. The challenge to Mr. Whittock is he was serving after his term expired. And in reading that last problem is not really fixed by the statutory amendment, correct? Yes, it is. Oh, it is? Yes, it is. Oh, because it says until the next person's appointed. Exactly. Okay. And in reading, Taylor, it's clear that the focus is not about a particular person. This wasn't a decision that said, well, on these particular, if you serve on these particular dates with this particular time frame, that was improper. The decision turns on the two types of improper appointments, which the Taylor court said made the merit board illegally constituted at the time that it made its decisions. So Taylor covers the same challenges covered here, and that's why this case is governed by the de facto officer doctrine, under the view explained first by Justice McMurrow in her Daniels concurrence, and under this decision made just last week by the first district in Lopez. I'm not going to go through the details of the doctrine. It actually was very well written out, I think, for the first time since Daniels. Someone's actually addressed the history. Going back to the 15th century. Yes. And going back to 2010 in the state of Illinois. So Lopez did a deep dive in the origin and use of the de facto officer doctrine here in Illinois and elsewhere, and of particular interest is Lopez's application of the doctrine following the approach recommended by Justice McMurrow, and that is the balance of two competing public interests. There is first the public interest in bringing illegalities in the appointment of administrative officers before the judiciary for review. And but, as Justice McMurrow explained, the public interest, while it lies in exposing improper appointments, there is not a public interest in invalidating a large number of otherwise appropriate final administrative decisions. So once the matter has been litigated by the courts, which it was in Taylor, the public interest in addressing illegality turns, And it turns to the problem that would exist if, in a repetitive way, case after case, deals with the same impropriety. And Lopez, and I think it correct, but correctly used the word, the upheaval that would result. And what types of — Am I correct that the ratification would be that the case would get remanded back to a new board? It wouldn't necessarily be a new hearing, right? It would just get remanded back to a new board for review? Well, first of all, I don't think under the de facto officer doctrine — I'm saying, let's say we don't follow either the de facto officer doctrine or the retroactivity, and we say, you know what, the board was improper. Right. So if there was a remand, it doesn't make any sense, and I'll tell you why. The three officers challenged here sit on the merit board. Two other officers who were involved in the Cruz decision, there may be more, but I know of two that also sit on the merit board. So I don't know, as a practical matter, what would be accomplished by remand. Wait, so they're still on the merit board, but now they're legally on the merit board because the statute has gone into place? Well, they're on the merit board under the amended statute. Right. I will say that certainly the sheriff, and I don't think the merit board, thought that these people were improperly appointed. I have seen that. And in fact, they thought that the county had home rule to make the types of appointments that they did, to make appointments that were less than six years. Taylor said that you were wrong. Pardon me? Taylor said that you were wrong. Taylor didn't decide home rule until May of 2017, and within months, the statute was changed. It's very rare to have such a quick change, shall we say, by the legislature. And yes, it was wrong, but it wasn't wrong all along. It was only wrong after the first court had decided home rule. But let me just finish up about the remand issue, and that's the whole point of the de facto officer doctrine, that you don't have to redo everything. You don't remand. You validate the decision that was made under that doctrine. I'd like to speak very briefly. Well, I guess I would like to articulate very briefly the type of upheaval that can occur by not applying the de facto officer doctrine. Potentially hundreds of plaintiffs would seek invalidation of disciplinary decisions made by a purportedly improperly appointed merit board. It would put into jeopardy other decisions made by the merit board. The merit board does not just deal with discipline. Promotions. Promotions and job classifications. It would cause an incredible burden on the merit board, basically doubling the merit board's worth. These are not full-time people. It would cause a burden on them, and frankly, it would put a very large burden on the circuit court and the appellate court, because no doubt most of these cases would come back for review and possibly appeal. So the public has an interest in an orderly conclusion to complaints against sheriff's officers, and all of this upheaval can be avoided by applying the de facto officer doctrine. There is a second independent reason why the merit board decision is not void, and that is the doctrine of retroactive application, which applies to the 2017 amendment to the Merit Board Act. There is a set of retroactivity jurisprudence, and as I read them, it boils down to a two-point test. First, if the language of the statute expressly says whether the act should be applied retroactively or prospectively, then that language prevails, but we don't have that situation here. So what happens in the absence of such language? The Illinois statute on statutes supplies the rule, and procedural changes are applied retroactively, and that's, for example, set forth in Alvarez v. Howard, paragraph 23, Supreme Court decision. So in this case, the changes to the Merit Board Act were procedural. The change talks about the timing for terms of office, that an appointment does not have to be exactly six years, and that the time for a member to leave office is when his or her successor is appointed and qualified. And procedural changes often involve timing. And I would also add that this case is also like Murphy v. Police Board, which is a First District case from a number of years ago, 1968. But there the court allowed a statutory change, excuse me, held that a statutory change allowing a hearing before a single member of a police board was a procedural change and was valid and could be applied retroactively. So this amendment is a change that's fundamentally a procedural change and should be applied retroactively. And I would also add there's a strong public policy reason to apply this amendment retroactively, and it's the same reasons that the de facto officer doctrine should be applied. It's in the public interest to do so. The transcript of proceedings that we were given, and I'm not sure who's speaking here, but they say this will not cure the past. We'll be working with the state attorney's office and hopefully the unions that represent our staff to work on going backwards to several hundred cases. So apparently somebody during the proceedings on November 7th of 17 didn't feel that it was going to be retroactive. Again, I'm not sure. So a single comment in a bunch of pages, a single comment to the legislature, does not mean the act should not be applied retroactively. That comment is not binding on the court. And when the statute is not ambiguous, you do not look to legislative history. And even if the statute is ambiguous, legislative history is not binding. And I refer, Your Honor, to People v. BLS, another Illinois Supreme Court case. Legislative history is not binding. What does matter is the rules for deciding when retroactivity occurs. And this amendment meets those rules. Unless there's more questions, I think you're out of time. Thank you. Excuse me, Your Honors. I want to start out briefly by addressing counsel's contentions about the use of force model, what's contemplated by it, how it's applied, things of that nature. I want to highlight for Your Honors that for an officer to encounter use of force and for any individual to be involved in use of force, this is not an ordinary circumstance. It is not something that everybody deals with on a daily basis. It is a highly unusual and unnatural occurrence to be involved in some sort of a use of force with a detainee, particularly in the course of employment. Now, the reason why that's important is because there are various things like adrenaline that factors into your memory in completing reports. That's why the whole argument about viewing the video footage prior to the completion of the reports is relevant to the determination is because when that adrenaline kicks off, if you haven't seen something, in this case, prior to completing your reports, that may affect your memory. You may not recall everything that occurred, and as far as the effect on that, that kind of goes into the mitigating circumstances as it relates to, Justice Nickler, your questions about why it took so long to complete this investigation. I want to highlight that the use of force order effective date is September 2011, and this incident occurred several months later in January of 2012. There was over a two-year delay before Officer Cruz was questioned by the internal investigation body of the Cook County Department of Corrections. That's certainly mitigating circumstances, but even if you look to the fact that there was an additional two years during the merit board proceedings, we're talking about now over six years has passed between this incident and trying to get Officer Cruz to a position where he has been given a meaningful process. That has not occurred to date. There was no meaningful process provided to him, and to make a fine point on it, due process is something that is required prior to the deprivation of a property interest. This is not just a procedural issue. It is a substantive issue. He was entitled to a meaningful hearing. He was entitled to due process, and the Merit Board Act outlines exactly to what process he was due. The fact remains that the sheriff did not comply with 7002 in comprising the board that was supposed to grant him that meaningful hearing. There wasn't a body in effect that could give him the process to which he was due prior to the deprivation of his employment. As it relates to the other element, which is the propriety of OC spray deployment and the use of force order, the use of force paradigm is not something that's supposed to be mechanically applied. It's something that is extremely fact specific and incident specific, and on the record at C-491, the OC spray policy expressly lays out when it may be used, and it indicates may be used when a verbal dialogue is failed to bring about the subject's compliance and the subject has signaled his intention to actively resist the officer's efforts to take lawful control of the subject. That is certainly demonstrated here even by the Merit Board's own findings of fact. Their analysis that he had an ability to de-escalate is sort of a red herring because it's not put in the grander context of the use of force inquiry. Just because he had an alternative mode of action that he could have taken that would have been in compliance with the use of force order, that does not mean that the action that he did take was a violation of the sheriff's orders. Now as it relates to opposing counsel's arguments about questions that it would raise among officers, I submit to you, your honors, that the questions raised by the Merit Board decision terminating officer Cruz provides absolutely no insight for officers in the Cook County Department of Corrections whatsoever as how to respond in incidents going forward. It does nothing to analyze or set forth the sheriff's expectations or the Merit Board's expectations about OC spray deployment. And my response to counsel would be that any questions that are raised are not only raised on the face of the decision by the lack of analysis, but they're increased as a result of that decision. And the next point that I want to get to is... I absolutely do that. I want to address counsel's slippery slope argument, the inflammatory claims, the potential hundreds of the plaintiffs could come forward, and these people are so awful and so against the public interest, and it would put everything into jeopardy. I submit that there are... I am fully confident that your honors are versed enough in the law to be able to avoid some sort of an argument about that going forward. And I will ask a question. What would be the point? Because all you're going to do is go back to even the same Merit Board or a different Merit Board, right? It's not like your client would be reinstated. And I'm not necessarily sure. Well, and I'm glad that you asked that, your honor, because what I submit to you is that counsel essentially stood up here before you and admitted that if he was remanded back to the Merit Board, he would not get a fair hearing. That's not what she said. She said... I think the implication... It's still the same Merit Board. It's still the same Merit Board. And so I think the implication from there is that there would not be a different result. And that suggestion to me would essentially mean that justice in the way of his procedural due process and substantive due process was delayed more than six years after the incident. And even when he was able to finally address the claims about the propriety of the Merit Board decision and the issues that were in there, the procedural concerns and the voidness of the decision, the failed constitution of the Merit Board, even after going through that whole long fight to suggest that he would go back to the same Merit Board and receive the same result would not be... So what do you think would legally happen if we were to find that the Merit Board decision was void because it wasn't properly constituted? What do you think would happen? Well, if the Merit Board decision in this case was void because it was not properly constituted, I would submit to you that there is an adequate basis under the administrative review law allowing that the court has jurisdiction to vacate a decision either in whole or in part. And if any part of the decision is affirmed, the administrative review law allows for monetary remedy or reinstatement. I submit that that... Are you saying, I just want to say, you're saying that the Merit Board could not then bring charges. He would be, they would not be able to bring charges. If he had murdered five people, which of course is not what happened here. I would say that would be an altogether different situation. In this case, we're weighing the public interest against... I'm asking you, what would happen here? In your mind, if we were to void the decision because the board was not properly constituted, what would happen in your case? In this case, I think that in accordance with the case law, it would be remanded back to the Merit Board for a new trial. However, I don't think that the prior case law totally disposes of this court's ability to reinstate the officer and give him back pay and stop essentially the Merit Board from going forward with an additional hearing. Okay. Thank you. Thank you. We will take the matter under advisement. You will hear from us shortly. Thank you. These are interesting questions. You guys did a great job. Thanks.